## Commonwealth, Appellant, *v.* Potts.

Argued November 9, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Paul M. Petro,* Assistant District Attorney, with him *Jess D. Costa,* District Attorney, for Commonwealth, appellant.

*Paul P. Posa,* with him *Greenlee, Richman, Derrico and Posa,* for appellee.

OPINION BY HOFFMAN, J., December 13, 1971:

This is an appeal by the Commonwealth from the order of the lower court dismissing the prosecution against the appellee for fornication and bastardy solely because a negative blood test requested by the defendant had excluded the appellee as fathering the bastard child. The prosecution had requested a second blood test, but this request was refused by the court. The court held that even if a second blood test did not exclude the appellee, the court must, as a matter of law, have a reasonable doubt as to his guilt. Further, the lower court held that the prosecution had no standing to request a second blood test, and that the only party with such a right would be the defendant.

The Act of July 13, 1961, P. L. 587, §1, 28 P.S. §307.1 provides that "[i]n a civil action in which pa-

ternity parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action . . . shall order the mother, child and alleged father to submit to blood tests." The Act of July 13, 1961, P. L. 587, §6, as amended, 28 P.S. §307.6.

Section 2 of the Act provides that the "tests shall be made by experts . . . . The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts qualified as examiners of blood types perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court."

Section 4 of the Act provides that if the conclusion of all the experts is uniform, "the question of paternity . . . shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."

Section 6 of the Act makes the aforementioned provisions "apply to criminal cases subject to the following limitations and provisions: (a) an order for the tests shall be made only upon application of a party or on the court's initiative . . . (c) the court may direct a verdict of acquittal upon the conclusions of all the experts under the provisions of section 4."

From the aforementioned passages it is clear that, as in the instant case, a criminal defendant may request and obtain a blood test, and if he were dissatisfied with the result, he could request an additional test or tests. The act, however, does not state that the Commonwealth in a criminal prosecution is foreclosed from requesting a second test, if the results of the first

test are not satisfactory to it. The only way that such a restriction could be read into the Act would be for us to read the provision allowing a moving party to request a second test as a negative pregnant denying the other side the right to request a second test. Neither logic nor sound principles of statutory construction support this view.

First, it makes no sense to allow only one side in a prosecution to present blood test evidence. For instance, had the Commonwealth requested a blood test which did not exclude the defendant, it would be unfair to restrict the defendant from having a second expert perform a second blood test. Second, the Act itself by the language that is found in Sections 2, 4 and 6 refers to "tests," which indicates that it is contemplated that more than one test may be introduced into evidence.

In *Commonwealth v. Krutsick*, 151 Pa. Superior Ct. 164, 30 A. 2d 325 (1943), we pointed out that since blood tests only attempt to show the impossibility of paternity "the putative father would have everything to gain and nothing to lose by the test, while the mother would have everything to lose and nothing to gain by it. The man's 'pitch' or 'throw' would always be 'Heads I win and tails you lose.'" 151 Pa. Superior Ct. at 167, 30 A. 2d at 326. Accordingly, in *Krutsick*, since our Court felt that blood tests were scientifically unreliable, we held that their prejudicial effect outweighed their probative value and we excluded them from evidence. The legislature subsequently, however, allowed the results of blood tests into evidence. The danger of scientific unreliability which we pointed out in *Krutsick* still, however, exists. While the legislature has reversed the decision in *Krutsick* to exclude blood tests altogether, the act should not be construed to allow the putative father, by first requesting a blood

test, to prevent the introduction of conflicting scientific data.

This is supported by *Commonwealth v. Coyle,* 190 Pa. Superior Ct. 509, 154 A. 2d 412 (1959), where we stated that the act preceding the present blood test act did not provide that the results from blood tests are conclusive.

The prosecution, therefore, should have been allowed to obtain a second blood test.

The lower court concluded, however, that the results of one blood test was sufficient to raise, as a matter of law, a reasonable doubt concerning a defendant's guilt (since the lower court refused to allow this case to go to a jury). This is moot in light of our disposition today. But, it should be noted that section 6 of the blood test act itself contemplates that if there is a dispute concerning the results of blood tests, the question of guilt should be submitted to jury. In an instance where one blood test excluded a defendant from parentage, this Court, expressing serious reservations concerning the defendant's guilt, awarded him a new trial instead of an outright discharge. *Commonwealth v. Coyle,* supra.

The order of the lower court is vacated and this case is remanded for proceedings consistent with this opinion.

———

CONCURRING AND DISSENTING OPINION BY CERCONE, J.:

I concur with the vacating of the order of the lower court and the remanding of the case. I dissent, however, from that interpretation of Section 6 of the Blood Test Act (Act of July 13, 1961, P. L. 587, as amended) which would require the submission of the question of guilt to a jury in every case where there is a dispute concerning the results of the blood tests.

It is my opinion that if the evidence consists only of two blood tests which are contradictory of each other that the jury should not be permitted to guess as to which one is correct. Section 4 of the Blood Test Act specifically states: "If the experts disagree in their findings or conclusions, the question shall be submitted *upon all the evidence.*" (Emphasis supplied)

I therefore would hold that if there is no other evidence except the contradictory blood tests, the matter should not be submitted to the jury for a determination of the defendant's guilt but the prosecution should be dismissed.