501 A.2d 691

**Maryjane Patricia FRASCH, Appellant,**

**v.**

**Raymond Arthur FRASCH.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 1985.

Filed Dec. 13, 1985.

Anthony J. Rosini, Assistant District Attorney, Shamokin, for appellant.

Vincent V. Rovito, Shamokin, for appellee.

Before WICKERSHAM, BROSKY and ROBERTS, JJ.

PER CURIAM:

Raymond Arthur Frasch, appellee, works for the postal service and supports two of his children[1] with a bi-weekly support order of $226.00. He also paid a spousal support order of $234.00 bi-weekly for his wife Maryjane Patricia, but at a January 1985 hearing before President Judge Peter Krehel the spousal support order was vacated and this appeal followed.

Appellant presents the following issues for our consideration:

1. Did the lower court err in vacating the prior order of support in this matter without taking testimony at the time of the hearing.

2. Did the actions of the lower court in deciding this matter without taking testimony exhibit a degree of bias, prejudice, lack of impartiality or the appearance thereof, capricious disbelief or prejudgment such as to raise

---

1. Michael age 14 and Robert age 10, reside with their mother. A divorce action is pending. Separation occurred in 1977. Two older children are emanicipated.

doubts as to the [lower] court's ability to preside objectively and fairly upon remand.

Brief for Appellant at 3.

We answer both questions in the affirmative.

At the hearing held before Judge Krehel, on January 18, 1985, both parties and thier respective counsel were present. Counsel for Maryjane Patricia desired to present testimony in opposition to the requested vacation of the order of spousal support, but his request was denied. Mr. Rosini, appellant's counsel, said:

It's my understanding from the discussion at Sidebar and with this Court's Clerk that the Court does not desire to take testimony, and for the purpose of the record I would like to submit my objection to that on behalf of my client.

THE COURT: We will note the objection and it's on the record.

MR. ROSINI: The Court has indicated that it would accept a statement of the party's position and without doing any deference to my objection I would for the Court state my client's position.

Mrs. Frasch lives at home with her two children, who are still minors and are still subject to support. She also has two other children who don't live at home full time, but who are attending college or technical training. I would note that Mr. Frasch is not paying any support towards either of those children, despite the fact they're seeking higher education. They do spend some time at home, particularly weekends and holidays.

Mrs. Frasch will testify that she has expenses, some of which are extraordinary for braces for the two children who are subject to the Support Order here today, Randy and Michael, in the amount of $100.00 a month, and I believe the total amount being $2,500.00 for the braces.

She does have a mortgage which she's paying which is approximately $105.00 a month. She has had low income loans and has had [remodeling] work done to the home

through the Redevelopment Authority and Community Affairs grants. She pays approximately $80.00 a week for groceries. Her water bill quarterly is approximately $40.00. She pays approximately $1,500.00 a year for heat. She pays school tuition for her two children, one $450.00 for the first child—I believe they attend Lordes Regional Hospital—and the second one is $115.00. She pays $29.50 for her cable. She has insurance expenses for the home of $209.00 a year. She has auto insurance of $246.00 a year. She spends for clothing approximately $500.00 a year for the children, and approximately $700.00 a year for herself. She has a sewage bill which is quarterly of (inaudible). She just had to spend $75.00 for eye glasses for one of her children and she just had to spend approximately $230.00 for glasses for herself. She has a $52.28 a month bill from the Pennsylvania Power and Light Company. She had at one time a $45.00 expense from the Geisinger Medical Center for one of her children. Her husband has in the past provided medical insurance. However, there is some question whether this would continue and she would request the Court to have him provide medical insurance for the children and the wife. She's been paying the difference between the deductible and the amount of insurance he provides. She also has expenses for life insurance, $40.60 a month. She has her driver's license expense, $24.00. She spends approximately $450.00 a year in automobile expenses and $31.00 a month in telephone expenses, and the large amount of that is due to the fact she has two children who are out of the area attending school.

It's my understanding that Mr. Comes from the Domestic Relation's Office would testify that Mr. Filer made a recommendation for support and had an Order entered for $996.66. We would submit that under the circumstances of Mr. Frasch's income, which I believe is biweekly, a gross income of $1,137.00, which would work out on a yearly basis to approximately—Your Honor, can

I speak with Mr. Comes a second? I don't have that information in front of me. The Domestic Relation's Office only has income reports through September of 1984. I would note that Mr. Frasch works for the United States Post Office and has recently received a raise. Since it has not been verified through Domestic Relations, we do not have—

THE COURT: Do you have a monthly income that is alleged here?

MR. ROSINI: The last month income available, gross income is $1,137.00 from September of 1984. Now, Mr. Frasch would have received an increase recently. However, we do not have a record of that. We would submit based on Mr. Frasch's income and his obligation to support the spouse and children, that the Court should sustain the Order which was recommended by the Domestic Relation's Office, which is $996. Thank you, Your Honor.

Record at 2–5.

\*　　\*　　\*　　\*　　\*　　\*

President Judge Krehel ruled:

THE COURT: Alright, even if we allowed testimony, the bottom line would be just the way it's been capsulized by both sides here, and we do have to depend in part on what our Domestic Relation's Section of Family Court provides for us. I see it this way, that at the time in September of 1984, when the Domestic Relation's Section was faced with a gross earnings of $1,137.00 by Mr. Frasch and zero earnings by Mrs. Frasch, that such an Order would be set up for $996.00 for spousal support, or at least the accumulation of spousal and children support.

With the ongoing $226.00 bi-weekly for the children, I see no reason why this Court should put the burden on Mr. Frasch after so diligently paying since 1977, $46,-900.00, and maintaining the children's support right along with it to get his wife an education to where she could manage to get in the labor market herself.

154

I'm going to leave the matter open for sixty days to give Mrs. Frasch *an opportunity to find a job in the sixty days. Otherwise, she has a bad education somehow,* especially in a technical field like Computer Science, because that is pretty much in demand. I *think it would be burdensome for this Court to put something additional on Mr. Frasch at this time. I will keep it in mind this way that a Temporary Order will be "zero" for Mrs. Frasch*—she has to go seeking employment, and if in sixty days she hasn't gotten any employment we will review the case administratively first and bring to the Court's attention that *poor Mrs. Frasch doesn't get a job after going to all the places and that nobody wants her after all these places, and she can't take care of herself.*

I'm sure the medical, eye glasses and whatever insurance coverage Mr. Frasch has been providing and will be providing, it won't be a burden on Mrs. Frasch, though she should be doing half the sharing of the cost of the children. *This is the time that women asked for equal rights. Let them have equal responsibilities as well.* That's all we are going to do in this matter today.

Record at 7–8 (emphasis added).

■ Our duty is clear in matter of this nature.[2] The rights of the wife and mother were clearly and directly affected by the court's vacation of her spousal support order—and she was not permitted to be heard. *No evidence* was taken. We find this action to be clear abuse of discretion, i.e., the vacating of the spousal support order without taking and giving consideration to testimony. As Judge Hoffman said in *Commonwealth ex rel. Robinson v. Robinson,* 318 Pa.Super. 424, 465 A.2d 27 (1983):

**2.** As we said in *Commonwealth ex rel. Cochran v. Cochran,* 339 Pa.Super. 602, 607, 489 A.2d 804, 807 (1985):

In reviewing support orders, an appellate court will defer to the court below in the absence of a showing of a clear abuse of discretion. *Machen v. Machen,* 278 Pa.Super. 135, 420 A.2d 466 (1980); *Commonwealth ex rel. Scanlon v. Scanlon,* 311 Pa.Super 32, 457 A.2d 98 (1983). The scope of review in support cases is very narrow. *Commonwealth v. Goodyear,* 270 Pa.Super. 326, 411 A.2d 550 (1979).

Because we find the record insufficient to support the order, we vacate the order of the lower court and remand for further evidentiary hearings.

Id., 318 Pa.Superior Ct. at 425, 465 A.2d at 28.

■ Reversed and remanded for an evidentiary hearing. Prior order of spousal support is reinstated retroactive to January 18, 1985. All arrearages are to be paid within 120 days of the date of this opinion. This case shall be assigned to a different judge. Jurisdiction is relinquished.