525 A.2d 405

**Denis J. KOLESKI, Appellee,**

v.

**Katherine D. PARK, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1987.

Filed May 4, 1987.

———

24

Martin J. King, New Hope, for appellant.

Charles J. Conturso, Morrisville, for appellee.

Before BECK, HESTER and ROBERTS, JJ.

BECK, Judge:

This case requires us to consider under what circumstances a court may order a party to submit to the extraction of

a second blood sample for the purpose of performing additional paternity testing.

We find that constitutional rights implicated in the extraction of blood samples and resolution of questions of paternity require that the moving party show by a preponderance of the evidence that the results of the first tests were inaccurate before a second blood extraction can be ordered. This showing shall be made at a hearing before the trial court. We, therefore, reverse the trial court's order that appellant submit to the taking of a second blood sample and remand for proceedings consistent with this opinion.

On December 19, 1984, appellant Kathy Park gave birth to a daughter. Thereafter, appellee Denis Koleski instituted this action for partial custody, claiming to be the father of the child. Appellant filed an answer denying the alleged paternity and suggested blood testing to disprove appellee's paternity. On July 17, 1985, the parties entered into a stipulation to submit to the extraction of blood samples for red blood cell antigen and human leukocyte antigen (HLA) typing and grouping. The results of these tests excluded appellee Denis Koleski as the father of appellant's child.

Appellee filed a Motion for Appointment of Experts to Perform Independent Blood Tests on May 21, 1986. He claimed that the prior tests were inaccurate based on his interpretation of the lab report as indicating (1) that the blood was held seven weeks prior to the performance of the tests, and (2) that he did not possess paternal obligatory genes in the range of AW 24–BW 16, when in fact he did possess genes A–1, W24. Appellee offered no evidence, expert or otherwise, in support of his assertions.

The trial court ordered Kathy Park to submit to a second extraction of blood at Metpath Labs in Trenton, New Jersey, for tests to be performed by that lab. The order also stated that such tests would be admissible into evidence for or against any party to the action without expert testimony and without challenge to the chain of custody of the blood samples. Appellant filed a motion for a protective order, which was denied. This timely appeal followed.

Appellant raises the following issues on appeal: (1) whether the trial court violated her rights under the Fourth Amendment of the Constitution of the United States, and Article I, Section 8 of the Constitution of Pennsylvania, by ordering a second blood extraction without showing that the tests done on the first blood sample were inaccurate; (2) whether the trial court violated her rights under the Fourteenth Amendment of the Constitution of the United States in ordering a second blood extraction without affording her a hearing or some other proceeding in which to present her objections; (3) whether the trial court erred in ordering the second blood extraction and tests thereupon to take place at an out-of-state testing agency, to be admissible without expert testimony or challenge to the chain of custody; and (4) whether the trial judge should be required to recuse on remand of the matter to it.

We agree with appellant that the trial court erred in failing to hold a hearing on the alleged inaccuracy of the first test results and in ordering the second tests to be done at an out-of-state lab. We, therefore, reverse the order of the trial court and remand for proceedings consistent with this opinion. We do not find, however, that appellant has shown cause for us to direct assignment of this matter to a different judge on remand.

Our starting point in resolving these issues is the stipulation entered into by the parties. Whatever the parties' rights to blood testing may be under statute or case law, they are free to waive them by stipulation, so long as the stipulation does not affect the court's jurisdiction or due order of business. *Tyler v. King*, 344 Pa.Super. 78, 496 A.2d 16 (1985).

Stipulations are interpreted according to the intent of the parties. *Longenecker v. Matway*, 315 Pa.Super. 411, 416, 462 A.2d 261, 263 (1983). We conclude upon examination of the stipulation that the parties did not intend to bind themselves, one way or the other, as to a second blood extraction. The agreement very specifically sets forth a date, place, and time for the extraction of blood, and calls

28

for appellee to produce one check in payment of the testing. It provides that the results of the tests shall be admissible into evidence, without expert testimony or challenge to the chain of custody of the samples, but does not indicate that these results will be conclusive. It neither requires nor forbids a second blood extraction.

██ We next turn to the Uniform Act on Blood Tests to Determine Paternity ("Act")[1] to determine what rights to further blood testing it might provide for appellee.[2] Section 6133 of the Act provides:

In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require.

██ We find the Act to be inconclusive on the question of further blood testing. The language of Section 6133 is ambiguous as to the number of blood extractions and blood tests that may be ordered from each party.

██ In any event, regardless of the literal meaning of the section, we are bound to give it a construction that will preserve its constitutional validity, a result we must assume the legislature intended. *Com. Dept. of Transportation v. Emory,* 91 Pa.Commw. 580, 498 A.2d 26 (1985). To pre-

1. 42 Pa.Cons.Stat.Ann. §§ 6131–6137 (Purdon 1982).
2. Appellant argues that the Act does not apply to the instant case, as it was legislatively intended to be used only by mothers trying to obtain, rather than to prevent, the adjudication of a putative father's paternity. We disagree. Section 6133 applies to *any* civil matter (and some criminal ones) "in which paternity, parentage or identity of a child is a relevant fact." *See also In re Adoption of Young,* 469 Pa. 141, 364 A.2d 1307 (1976); *In re Mengel,* 287 Pa.Super. 186, 429 A.2d 1162 (1981) (Spaeth, J., concurring).

serve Section 6133 from conflict with the Fourth Amendment, we construe it as requiring a showing that the first blood test results were inaccurate before a second blood extraction can be ordered.[3]

■ The Fourth Amendment to the Constitution of the United States expressly provides that "[t]he right of the people to be secure in their *persons*, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." (Emphasis added).[4] Compulsory administration of a blood test falls within the scope of the Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). The Fourth Amendment's "proper function is to constrain, not against all intrusions [into the body for blood] as such, but against intrusions which are not justified in the circumstances." *Id.*, at 768, 86 S.Ct. at 1834.

We determine what is justified under the circumstances by examining the values served by making a second blood test broadly or narrowly available. An outright prohibition against a second blood extraction here would promote the appellant mother's right to her bodily integrity. However, it could also destroy the appellee putative father's ability to prove his claim that he is indeed the father of the child. The United States Supreme Court in *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), found "plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody and management of his or her children' " is an important and legally protectible interest. *Id.* at 27, 101 S.Ct. at 2159, *quoting Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

---

**3.** We note that the constitutionality of the Act as applied to a first blood extraction and tests conducted on that blood is not before us. Our decision here applies only to subsequent blood extractions and tests under the Act.

**4.** Art. I, Sec. 8 of the Constitution of Pennsylvania is essentially the same: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures."

Appellant's child also has a "compelling interest in the accuracy of such a determination [of paternity]." *Little v. Streater*, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981). First and foremost is her interest in the care and companionship of her father. Additionally, an adjudication of paternity would give her rights to her father's estate,[5] workmen's compensation benefits,[6] and financial support.[7]

We are not, however, blind to the possibility of harrassment where one party could impose multiple blood testing upon the other. We recognize that paternity actions create emotionally-charged circumstances. We therefore limit the right to subsequent blood extraction to those situations in which the proponent of further testing shows by a preponderance of the evidence that the initial test was defective and a subsequent test is needed for an accurate determination of paternity.

As the accuracy of different tests and combinations of tests varies,[8] so too will the difficulty of making the required showing. If the tests performed on the first blood sample are of minimal accuracy, a motion for further blood extraction and testing should be readily granted.[9] Where the tests conducted on the first sample are scientifically believed to yield a highly accurate result,[10] however, the

---

**5.** Pa.Stat.Ann., tit. 20, §§ 2107(c), 2514(8), 3538, 6114(5) (Purdon 1975 and Supp.1986).

**6.** Pa.Stat.Ann., tit. 77, § 562 (Purdon Supp.1986).

**7.** Pa.Stat.Ann., tit. 48, § 167(b)(3) (Purdon Supp.1986).

**8.** "Each blood group yields a particular probability of exclusion from paternity...." ' [T]he cumulative chance of exclusion ... is the sum of the exclusions in [the blood groups tested] minus their product ...' Lee, [*Current Status of Paternity Testing,* 9 Fam.L.Q. 615 (1975) ] at 628–29. Thus, the cumulative probability of exclusion varies with the type and number of blood groups tested." *Hummel v. Smith,* 301 Pa.Super. 276, 286, 447 A.2d 965, 970, n. 3 (1982) (Beck, J., concurring).

**9.** *See, e.g., Com. v. Potts,* 220 Pa.Super. 152, 155, 286 A.2d 663, 665 (1971) (second blood test granted on request since only blood tests available at that time were known to be "scientifically unreliable.")

**10.** By itself the HLA system is 76% accurate in excluding a non-father. *Lee, supra,* at 627. More sophisticated testing, using seven blood

moving party will have to demonstrate that the tests were conducted or interpreted improperly before further blood extraction will be ordered.

■ We turn now to the question of by what procedure the determination that the first blood tests were inaccurate shall be made: whether a hearing is required, or whether some other procedure, such as affidavits, will suffice. Appellant argues that the due process of law guaranteed her by the Fourteenth Amendment to the Constitution of the United States requires that the trial court afford her a hearing to determine whether the first tests were defective before ordering a second blood extraction. We agree.

The Fourteenth Amendment provides in part: "No State shall ... deprive any person of life, liberty, or property, without due process of law ..." Extraction of blood from the body is a deprivation subject to the constraints of the Fourteenth Amendment. *See Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).

■ Due process is a flexible concept requiring such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant. *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972). The factors to be weighed in determining whether a proposed procedural safeguard, such as a hearing, is required by due process were first set forth in *Matthews v. Eldridge,* 424 U.S. 319, 334–335, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976):

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

groups involving 21 HLA genetic markets—MNS; D,C,C$^w$,c; E,e; AcP (A,B,C): A1,A2,B,O; Glm$^a$,Glm$^x$, G3m$^b$; Jk$^a$,Jk$^b$ (Kidd)—yields a cumulative probability of exclusion of 95.5%. *Ibid.*

The private interests involved in this action are substantial. Appellant has an interest in avoiding an unnecessary blood extraction. Everyone involved has an interest in the accuracy of the blood test results, which may be the basis for the creation of a parent-child relationship between appellee and appellant's child.

Secondly, a hearing at which expert testimony is presented, with an opportunity for cross-examination, is the procedure most likely to result in a correct determination of the accuracy of the first set of tests.[11] Written submissions of the parties would not permit the trial court to make the assessments of credibility which may be necessary in the face of conflicting expert testimony.

This court in *Tyler v. King*, 344 Pa.Super. 78, 86, 496 A.2d 16, 20 (1985) acknowledged the value of expert testimony, which is required by Section 6134 of the Act for admissibility of blood test evidence absent stipulation of the parties to the contrary:

Where the expert witness performed the test or experiment at issue, as is the case under Section 6134, calling him to testify allows a party to inquire into the circumstances surrounding the test, the factors influencing its results, the variables which could affect the result, and

11.  The need for expert testimony is illustrated by the facts of this case. Appellee here alleges that the first tests were inaccurate based on (1) the lapse of time between the taking of the blood on October 21, 1985, and the date of the report, January 16, 1986, and (2) the statement in the lab report that he did not possess paternal obligatory genes in the range of AW 24–BW 16, when in fact he did possess the gene A–1, W24.

The testimony of an expert at the accuracy hearing may show that the performance of the test itself takes seven weeks, or that holding the blood for a certain period of time before conducting the tests does not affect the accuracy of genetic analysis of the blood. (We note that HLA testing is actually tissue typing, which may involve weeks of tissue culture growth before the genetic analysis can be done.)

As to the second claim of error, we note that BW16 appears to be a paternal obligatory gene. While appellee may possess the gene AW24, the report states his BW values as B–W21, W35. Only an expert can tell us whether appellee's possessing the AW24 gene is sufficient, or whether to be the child's true father he must also have the gene BW16

the procedures used in recording and preserving the result.

Finally, we note that the state itself has an interest that decisions involving the welfare of children be accurate and just. *Lassiter v. Dept. of Social Services*, 452 U.S. at 27, 101 S.Ct. at 2159–2160. A hearing on the accuracy of first blood tests will advance that interest, while imposing only a minimal administrative burden on the trial court. The hearing itself should be brief, involving as it does no issues other than the validity of the tests. This proceeding may actually further judicial economy in contributing to the trial court's understanding of the scientific data involved in blood tests and promoting settlement between the parties.

In sum, we reiterate our belief, first expressed in *Corra v. Coll*, 305 Pa.Super. 179, 193–194, 451 A.2d 480, 488 (1982), that "[t]here is no situation of more monumental importance, or more worthy of due process protection, than the creation of a parent-child relationship." We find that a hearing is the best forum for making the showing that the first blood tests were inaccurate. Requiring this showing before a second blood extraction will be ordered protects the parties' Fourth Amendment rights and restricts the potential for harassment, but does not prevent a party from obtaining further blood testing where necessary to an accurate determination of paternity.

Appellant claims the trial court erred in ordering that the second blood extraction take place at an out-of-state lab, and that the results would be deemed admissible without expert testimony or challenge to the chain of custody. We agree.

Absent agreement to the contrary, a party has full right to challenge the admissibility of blood tests results. *Tyler v. King*, 344 Pa.Super. at 88, 496 A.2d at 21. As we have concluded, appellant's stipulation as to the admissibility of blood test results applied only to the first blood extraction.

34

If further testing is ordered on remand, such testing should be performed at a facility within the jurisdiction of the court. Appellant may need to compel the testimony of the person performing the tests in further proceedings on this matter. Performance of the tests at a lab within the jurisdiction of the court protects her ability to do so.

■■■■ Appellant claims that the trial judge should be required to recuse on remand of this matter to him. We disagree. Assignment to a different judge on remand will be made only when the judge's actions below demonstrated a degree of bias, capricious disbelief, or prejudgment such as to raise doubts as to his or her ability to preside objectively and fairly upon remand. *Frasch v. Frasch*, 348 Pa.Super. 149, 501 A.2d 691 (1985). While we disagree with the trial court's legal conclusions here, it is clear from the record that his consideration of the matter was fair and untainted by bias or prejudice toward appellant.

Reversed and remanded for proceedings consistent with this opinion.