545 A.2d 371

**Torriona MITCHELL, Appellant,**

v.

**Anthony Charles HOPSON.**

Superior Court of Pennsylvania.

Argued May 3, 1988.

Filed Aug. 3, 1988.

Lorraine M. Bittner, Pittsburgh, for appellant.

Before CIRILLO, President Judge, and BECK and POPOVICH, JJ.

CIRILLO, President Judge:

This is an appeal from an order entered by the Court of Common Pleas of Allegheny County.

On October 3, 1985, appellant Torriona Mitchell initiated this action by filing a complaint for support of her infant son, Anthony Charles Hopson, Jr. (Anthony), who was born on September 20, 1985. When Anthony was born, Ms. Mitchell applied for and was determined to be eligible to receive monetary public assistance for Anthony from Aid to Families with Dependent Children (A.F.D.C.). As a condition to receiving this public assistance, Ms. Mitchell was required to file this support action against the man she alleges to be her son's father, namely Anthony Charles Hopson.

Pursuant to Ms. Mitchell's complaint, an informal conference was held at which Mr. Hopson denied paternity of Anthony. Immediately following the conference, the court issued an order, pursuant to section 6133 of the Uniform Act on Blood Tests to Determine Paternity,[1] requiring the parties to present themselves promptly at 9:15 a.m. on July 17, 1986, at the University Health Center of Pittsburgh for blood tests. The parties complied with the order and the Human Leucocyte Antigen (H.L.A.) blood test was performed.

---

1.  Section 6133 states:

    In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to

The test results, which excluded Mr. Hopson as the father of Anthony, were then sent to the family court division of the court of common pleas and entered onto the court docket. Shortly thereafter, the trial court entered the following order:

AND NOW, this 22nd day of August, 1986, it appearing to the Court that Plaintiff has filed a complaint against Defendant for support for a child born out of wedlock and that the blood test results, a copy of which are attached hereto, have excluded the Defendant as the father of the child Anthony Hopson, Jr., born September 20, 1985, it is hereby ordered as follows:

1.) A rule is issued on Plaintiff to show cause why the support complaint should not be dismissed.

2.) In the event that Plaintiff has any reason why this case should not be dismissed she must file a statement of such reasons ...

3.) If no such statement is filed within thirty (30) days of the date of this order, the case is dismissed.

The order also assessed the cost of the blood test, $450.00, against Ms. Mitchell.

On August 25, 1986, Ms. Mitchell, who was unrepresented by counsel at the time, filed a handwritten statement in which she asserted that she still had cause to believe that Mr. Hopson was the father of her son Anthony. In support of this contention, she stated that the child resembled Mr. Hopson and had hereditary medical problems which run in Mr. Hopson's family. Ms. Mitchell also expressed her belief that there had been a mix-up in the blood samples used in the H.L.A. blood test and requested that another test be performed at her expense.

In response to Ms. Mitchell's request for a second blood test, a pre-trial conference at which both parties were to be

blood tests. If any party refuses to submit to such test, the court may resolve the question of paternity, parentage, or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require.
42 Pa.C.S. § 6133 (1982).

present was scheduled for December 2, 1986. At that time, only Ms. Mitchell appeared. Following the conference, the trial court entered an order directing Ms. Mitchell to pay six hundred dollars ($600.00) within thirty days. Upon receipt of the sum, additional blood tests were to be scheduled. In the event Ms. Mitchell did not pay the stated amount, her action was to be dismissed.

After the entry of this order, Ms. Mitchell secured legal counsel who assisted her in filing a petition for reconsideration. In the petition, she explained her financial inability to pay the six hundred dollars within the thirty day period. In addition, she requested that the costs of the first blood test be assessed against the county, that a second set of blood tests be scheduled at a specific hospital where she would be better able to make payment arrangements, and that she be permitted to pursue her action. In an order dated January 6, 1987, the trial court denied her petition without comment.

Thereafter, on August 26, 1987, the court entered an order dismissing Ms. Mitchell's support action due to her failure to comply with the court's order to pay the cost of the additional blood tests. Subsequently, on September 22, 1987, Ms. Mitchell filed this appeal.

Ms. Mitchell raises the following issues for our review: (1) whether the trial court's sua sponte dismissal of this action without a hearing and based upon blood test results never admitted into evidence violates case and statutory law, violates her right to due process, and is an abuse of discretion; and (2) whether the trial court's order directing the prepayment and the assessment of the costs of blood tests upon her violates case and statutory law as well as her right to due process.

■ In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court responded to the first issue raised by Ms. Mitchell by stating that:

In dismissing the instant action, this Court did what it was compelled to do since the initial blood tests conclusively excluded HOPSON as being the father of MITCHELL'S minor child. Had this case gone through the futile

exercise of trial, this Court would have been required, pursuant to Section 6136 of the [Uniform] Act [on Blood Tests to Determine Paternity], to grant a compulsory non-suit in favor of HOPSON.... The Court was mandated by the conclusive results of the blood tests to resolve the issue of paternity in favor of HOPSON, which it did when it dismissed MITCHELL'S Complaint for Support.

The Uniform Act on Blood Tests to Determine Paternity (Uniform Act) applies to all civil matters. 42 Pa.C.S. § 6132(a) (1982). Since all actions in which the paternity of a child born out of wedlock is in dispute are civil actions, 23 Pa.C.S. § 4343 (Supp.1987), the Uniform Act applies to the case at hand. Section 6136 of the Uniform Act, which is titled "Effect of test results," states the following:

If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage, or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.

42 Pa.C.S. § 6136 (1982). This section directs trial courts to resolve cases accordingly if they find that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child; it does not authorize trial courts to dismiss or resolve actions involving paternity disputes on the basis of blood tests when those blood tests have never been entered into evidence.

In *Commonwealth ex rel. Valentine v. Strongel,* 246 Pa.Super. 466, 371 A.2d 931 (1977), Ms. Valentine filed a petition for support of her illegitimate child. Mr. Strongel, the alleged father, denied paternity. Consequently, prior to trial, the court ordered that blood tests be performed on Ms. Valentine, Mr. Strongel and the child. The experts who performed the tests made written reports of their findings to the court. In addition, the results were mailed to both parties. At trial, however, no one testified regarding the

blood test results. Consequently, on appeal, we found that there was absolutely no evidence in the record of the occurrence or result of any blood test and that it was error for the trial court to consider the blood tests in making its determination regarding the paternity dispute.

The instant case did not even progress to the stage of trial. Rather, the trial court dismissed this action sua sponte following the hearing it held on Ms. Mitchell's request for an additional blood test. This was clearly error. Although the blood tests were performed pursuant to the court's direction, it is up to the parties involved in this action to move for the admission of the tests into evidence. Moreover, unless the blood tests are put into evidence, they cannot be considered by the court in resolving the paternity dispute. "The right of a litigant to in-court presentation of evidence and the right to confront and cross-examine adverse witnesses are essential requisites of due process." *Coble v. Coble*, 323 Pa.Super. 445, 447, 470 A.2d 1002, 1003 (1984). By dismissing Ms. Mitchell's action on the basis of the blood test results, the trial court denied Ms. Mitchell her right to due process as well as her right to confrontation. Consequently, we must vacate the trial court's order dismissing Ms. Mitchell's action. Further, we direct the trial court to hold a hearing to resolve the issue of Mr. Hopson's paternity of Anthony. At the hearing, the parties must be given the opportunity to move the results of the blood test into evidence. See *Turek v. Hardy*, 312 Pa.Super 158, 164, 458 A.2d 562, 565 (1983) ("Before results of H.L.A. testing are admissible, a proper foundation must be laid"). In addition, Ms. Mitchell must be given the opportunity not only to argue against the validity of the results (assuming the results are actually moved into evidence), but also to offer evidence regarding other factors which are relevant to establishing Mr. Hopson's paternity of Anthony, such as Anthony's physical resemblance to Mr. Hopson. *See Tyler v. King*, 344 Pa.Super. 78, 96, 496 A.2d 16, 25 (1985) (comparison of child's physical traits to those of alleged father a valid comparison in paternity cases); *Commonwealth ex rel. Lonesome v. Johnson*, 231 Pa.Super. 335, 331

A.2d 702, 704 (1974) (clear physical resemblance between child and alleged father considered as evidence of his paternity). At the close of the evidence, the trial court must decide whether Ms. Mitchell has proven by a preponderance of the evidence admitted during the course of the hearing that Mr. Hopson is Anthony's biological father. If the blood test results have not been entered into the evidence by one of the parties, the trial court may not rely upon them in rendering its verdict.

Regarding the second issue raised by Ms. Mitchell, we note that in *Koleski v. Park,* 363 Pa.Super. 22, 525 A.2d 405 (1987), we limited the right to subsequent blood extraction to those situations in which the proponent of further testing shows by a preponderance of the evidence that the initial test was defective and that a subsequent test is needed for an accurate determination of paternity. In addition, we held that this showing is to be made at a hearing in which the only issue involved is the validity of the tests. If the proponent of the additional testing satisfies the required showing, then further testing is to be ordered by the court.

■ Further testing may not be conditioned upon the prepayment of the cost of the testing. In *Johnson v. Brinker,* 326 Pa.Super. 464, 474 A.2d 333 (1984), we ruled that an order for submission to blood tests to determine paternity may not require any indigent party to pay any portion of costs of the blood tests as a condition precedent to their administration. This holding applies equally well to those situations in which the right to additional blood testing is found to exist.

In this case, although the December 2, 1986, hearing was untranscribed, it appears from the trial court's order and subsequent opinion, that this hearing was held solely to address the issue of the necessity for further blood testing. Thus, it would seem to satisfy the hearing requirement formulated in *Koleski.* Following the hearing, however, the trial court entered an order which provided for additional blood testing on the condition that Ms. Mitchell pay for the cost of the blood test within thirty days of the court's order. This order was improper and must be vacated. We

note that in the trial court's Rule 1925(a) opinion, the court determined that it should not have granted Ms. Mitchell's request for another blood test.[2] On remand the trial court must enter an order either unconditionally granting additional blood testing or denying the same.

■ The trial court also assessed the costs of the first blood test against Ms. Mitchell.[3] However, in its opinion, the trial court states that "it would appear that since the Department of Public Welfare mandates, as a prerequisite to assistance entitlement, that an indigent individual file a Complaint for Support if necessary to establish the paternity of the child born out of wedlock, that agency should be responsible for the costs associated with that proceeding." We agree with this determination.

As a condition to receiving monetary assistance for Anthony from A.F.D.C., Ms. Mitchell is required to cooperate in establishing Anthony's paternity and in obtaining support payments to which Anthony might be entitled. 42 U.S.C. § 602(a)(26); 62 P.S. §§ 432.7(a)(3), (4). It is, however, the Department of Public Welfare which is actually charged with the responsibility of establishing paternity and securing support payments. *See* 45 C.F.R. § 302.31 (1987). The

2. In reaching this conclusion the trial court observed the limitation to subsequent blood extraction which we formulated in *Koleski,* and then reasoned that:

The limitations placed upon granting a request for a second blood test indicate that the instant proceeding did not present such circumstances so as to compel the second test. MITCHELL did not demonstrate that the initial test was so defective as to necessitate a second test to determine paternity. The only question raised as to the validity of the first test was MITCHELL'S suspicion that HOPSON'S tardiness in some fashion may have impaired the test results. Absent something more than a mere surmise, this Court cannot and should not have granted MITCHELL'S request.

3. Section 6135 of the Uniform Act states:

The compensation of each expert witness appointed by the court shall be fixed at a reasonable amount. It shall be paid as the court shall order. Subject to general rules, the court may order that it be paid by the parties in such proportions and at such times as it shall prescribe or that the proportion of any party be paid by the county and that after payment by the parties or the county, or both, all or part or none of it be taxed as costs in the action....

42 Pa.C.S. § 6135.

Department of Public Welfare is Pennsylvania's "IV-D Agency." Accordingly, it bears the responsibility of administering and supervising the Commonwealth's A.F.D.C. program. *See* 42 U.S.C. § 601 et seq. Under 42 U.S.C. § 654, the Department of Public Welfare is required to establish the paternity of children born out of wedlock and to enter into "cooperative agreements with appropriate courts and law enforcement officials ... including the entering into of financial arrangements with such courts and officials in order to assure optimum results under its program." 42 U.S.C. §§ 654(4), (7). This statute clearly contemplates payment for blood tests, not by the recipients of public assistance funds, but by the Department of Public Welfare or the local domestic relations office with whom it contracts. *See* 62 P.S. § 432.7(e)(1). Accordingly, on remand, the trial court should re-evaluate its order assessing the costs of the blood test on Ms. Mitchell.

Based on the foregoing discussion, we vacate the following orders of the trial court: (1) the order assessing the costs of the first blood test on Ms. Mitchell; (2) the order conditioning the additional blood test on Ms. Mitchell's payment of six hundred dollars in thirty days; and (3) the order dismissing the action. In addition, we remand for further proceedings consistent with the preceding instruction. Jurisdiction relinquished.