LOWE, J.,
This matter is on appeal before the Superior Court of Pennsylvania following an order entered by this court on July 17, 1990 directing Nancy DeAngelo (petitioner), David Murray (respondent), and Arden DeAngelo (child) to submit to red cell enzyme and serum protein tests.
On October 11, 1986 petitioner gave birth to child. Five days later, petitioner filed a complaint in support, wherein she alleged that respondent is child’s father. Respondent denied and has continued to deny paternity. On May 5, 1987 the Honorable William T. Nicholas of this court ordered the three *541 parties to submit to blood tests (red cell typing and human leucocyte antigen testing) under the auspices of Clinical Testing and Research Inc. for the purpose of determining paternity. After analyzing the test results, Clinical Testing issued a report on August 16, 1987, prepared by Dr. Leslie Johnson, in which she concluded that “the calculated probability of [respondent being the father] is 90 percent.” In the report Dr. Johnson recommended that “additional genetic studies should be considered.” In an effort to refute Clinical Testing’s findings, respondent retained the services of Dr. Paul Oldfather, who examined the results of the first test and concluded that further testing in the human leu-cocyte antigen and red cell systems were required. Dr. Oldfather suggested DNA fingerprinting as a means by which paternity could be definitively established. Thereafter, the Honorable Samuel W. Salus II entered an order directing the parties to submit to genetic polymonphismus testing. The blood samples were sent to the Cellmark Diagnostic Center which conducted DNA fingerprinting analysis and issued a report on July 7, 1989 stating that “it is not possible for [respondent] to be the biological father of [child].” Dr. Johnson reviewed the DNA fingerprinting test result and expressed concern over its accuracy and scientific reliability. Again she suggested that further testing be performed and specifically recommended red cell enzyme and serum protein tests. On February 8, 1990 petitioner filed a petition for genetic testing in which she requested, on the basis of Dr. Johnson’s recommendation, that the parties submit to red cell enzyme and serum protein tests. The court granted the petition to which respondent objected on the grounds that substantial and sufficient testing had already been conducted.
*542 The Uniform Act on Blood Tests to Determine Paternity, 42 P.S. §6131 et seq., governs cases such as this in which paternity is an issue and blood testing is necessary to resolve the question. Section 6133 of the act provides:
“In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such a party, or enforce its order if the rights of others and the interests of justice so require.”
Respondent maintains that it is unprecedented for a court to order a third set of blood tests and therefore argues this court erred in granting petitioner’s request. However, in Koleski v. Park, 363 Pa. Super. 22, 525 A.2d 405 (1987), the Superior Court found the act to be inconclusive on the question of further blood testing because the language of section 6133 is ambiguous as to the number of blood tests that may be ordered by each party. In Koleski and again in Mitchell v. Hopson, 376 Pa. Super. 166, 545 A.2d 371 (1988), the Superior Court endeavored to resolve the ambiguity by promulgating the circumstances under which a court may order parties to submit to additional blood testing. The Superior Court stated that the proponent of further testing must show by a preponderance of the evidence that the initial test(s) were defective and that a subsequent test is necessary to establish paternity conclusively.
*543 In our case, the court finds that petitioner has met this burden. To recapitulate, Clinical Testing’s interpretation of the first tests indicated that respondent in all likelihood is child’s father; conversely, according to Cellmark’s analysis of the second test, respondent is definitely not the father. Although petitioner has not shown that either of the tests was defective, clearly the two tests yielded contradictory results and a third test is essential in order for the court to render an accurate determination of paternity. Otherwise, the court’s ultimate ruling on the issue of child’s paternity would be predicated upon speculation and conjecture.
As the Superior Court was in Koleski, so this court is mindful of the possibility of harassment where one party could impose multiple blood testing on the other. Contrary to respondent’s contentions, petitioner is not “grasping at straws in the hope that sooner or later a test will come out in her favor,” nor is she requesting an additional blood test to harass respondent. She merely wishes to have her daughter’s paternity decided conclusively and believes, as the court does, that requiring all parties to submit to red blood cell enzyme and serum protein tests is the best available means by which this question can be definitively resolved. Petitioner makes this request not only for herself but on her daughter’s behalf because, as the United. States Supreme Court noted in Little v. Streater, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), a child has a compelling interest in the accuracy of a paternity determination.
Respondent argues in his appeal that by ordering a third blood extraction, the court has violated his rights under the Fourth Amendment to the U.S. Constitution and Article I, section 8 of the Pennsylvania Constitution. This court disagrees. As the Pennsylvania Supreme Court observed in John M. *544 v. Paula T., 524 Pa. 306, 571 A.2d 1380 (1990), the person whose blood is sought has clear privacy interests in preserving his or her bodily integrity, and the constitutional right to be free from unreasonable searches and seizures. “While the rights and interests of a person whose blood sample is sought are also not absolute, neither are they insubstantial, and they must be taken into consideration by a court in determining whether there is ‘good cause3 for court-ordered blood tests under Rule 4010(a).” As the Superior Court noted in Commonwealth v. Hipp, 380 Pa. Super. 345, 551 A.2d 1086 (1988), the proper function of the Fourth Amendment of the U.S. Constitution as well as Article I, section 8 of the Pennsylvania Constitution is to constrain, not against all intrusions, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.
The case at bar is indeed unique, as two reputable blood sampling testers and researchers have arrived at diametrically opposed conclusions as to whether respondent is child’s father. Under these unusual circumstances, this court does not think that it is unreasonable to oblige the putative father to subject himself to a third test. Unquestionably, an accurate determination of child’s paternity is paramount and thus a third test is eminently justified under the circumstances, and does not constitute an unreasonable intrusion violative of respondent’s rights under the Fourth Amendment of the U.S. Constitution or Article I, section 8 of the Pennsylvania Constitution.
In view of the foregoing, the court’s July 17, 1990 order directing all parties to submit to red cell enzyme and serum protein tests should be affirmed.