674 A.2d 732

**Dianna L. CABLE, Appellee,**

v.

**Emmanuel S. ANTHOU, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 20, 1995.

Filed April 11, 1996.

Sanford S. Finder, Washington, for appellant.

Thomas O. Schmitt, Pittsburgh, for appellee.

Before CAVANAUGH, DEL SOLE and BECK, JJ.

CAVANAUGH, Judge:

Emmanuel S. Anthou appeals from the order entered by the Court of Common Pleas of Washington County granting appellee's motion for the performance of a second paternity test. We reverse and remand.

On December 30, 1993, appellee filed a petition seeking support for her child born out-of-wedlock on November 4, 1993. After appellant denied paternity, the court ordered the parties to undergo an HLA blood test. Before the scheduled testing date, the court changed the method of paternity testing for all local cases from blood extraction to buccal swab DNA sampling pursuant to 23 Pa.C.S.A. § 4343(b). Thus, the parties underwent buccal swab DNA testing, the results of which excluded appellant from paternity.

Thereafter, the court issued a rule to show cause why the support complaint against appellant should not be dismissed. Appellee filed an answer and new matter alleging that buccal swab testing is scientifically flawed. After stating that appellee "offered very little evidence in support of the proposition that the testing is scientifically flawed," the trial court concluded that "[buccal swab DNA] testing has been accepted by the scientific community." The court however granted appellee's motion for a retest for the following reason:

The minimal intrusiveness of the buccal swab collection method relieves the Court of the necessity of applying the *DeAngelo* [*v. Murray*, 536 Pa. 206, 638 A.2d 966 (1994)] test, since the buccal swab does not implicate Fourth Amendment protections. Once the Fourth Amendment protections are eliminated from the subsequent test analysis, the Court finds that [appellee] is entitled to an order requiring [appellant] to submit to subsequent buccal swab DNA paternity testing.

As such, it held that a "subsequent buccal swab test may be ordered without a showing that the latest test was defective."

Appellant now presents the following issue for our review:

Did the trial court err in ordering a second buccal swab DNA test when there was no evidence that the first test was defective?

Initially, we recognize that buccal swab genetic testing is a new method of paternity testing. Dr. Clifton Harris, associate director of the Department of Paternity Evaluation at Roche Biomedical Laboratories, Inc., testified at the hearing in this matter that Washington County first utilized buccal swab testing in August, 1993, and that it was the first county in Pennsylvania to adopt this testing procedure. After carefully reviewing the testimony of Dr. Harris, we have deduced the following regarding the buccal swab method of paternity testing:

A buccal swab is a cotton covered or Dacron covered wooden stick which is placed between the teeth and the inner cheek lining. The swab is then gently wiped against the surface of the cheek which loosens cells known as buccal epithelial cells. Those cells contain intact DNA which can be tested. The parties being tested each have four swabs collected which are then used to conduct six or seven tests. Each individual test is a genetic marker "system" and each "system" has a certain number of genetic markers contained in it. The DNA samples from both the alleged father and the child are mixed and used as the control standard. The genetic markers, or bands, of the alleged father, mother, child and the mix are then compared. If after testing all of the systems, two of the systems do not pick up the alleged father's bands in the child's bands, then the man is considered excluded from paternity.

The relevant statutory section under which the lower court ordered the paternity tests states the following:

§ 4343. Paternity

(c) Genetic tests.—

(1) Upon the request of any party to an action to establish paternity, the court shall require the child and the parties to submit to genetic tests.

(2) Genetic test results indicating a 99% or greater probability that the alleged father is the father of the child shall create a presumption of paternity which may be rebutted only by clear and convincing evidence that the results of the genetic tests are not reliable in that particular case.

23 Pa.C.S.A. § 4343(c)(1), (2).

We must vacate the trial court's order subjecting appellant to another paternity test because it is contrary to our Supreme Court's recent decision in *DeAngelo v. Murray*, 536 Pa. 206, 638 A.2d 966 (1994). The *DeAngelo* Court held the following:

Additional testing will not be permitted merely on the basis that different tests reach different results. Rather, this Court requires a showing that the latest test administered was defectively performed.

*Id.* at 210, 638 A.2d at 968. The Supreme Court did not consider the Fourth Amendment interest in reaching its decision, and we do not see the decision as one based on the nature or intrusiveness of the test, but rather one grounded on the reliability of the prior test.[1]

We find that the record sufficiently supports the trial court's conclusion that appellee "has not introduced any evidence to support her claim that the test was defective." Appellee merely argues the possibility of human error in that the DNA samples could have been switched. She attempts to

1. While we acknowledge that the *DeAngelo* Court cites to *Koleski v. Park*, 363 Pa.Super. 22, 525 A.2d 405 (1987), which held that the "compulsory administration of a blood test falls within the scope of the Fourth Amendment," we note that the *DeAngelo* Court does not articulate the Fourth Amendment interest in holding that, before a second test may be administered, it must be proven that the prior test was defectively performed. Furthermore, neither *DeAngelo* nor *Koleski* involve the compulsory administration of a buccal swab DNA test, but rather, that of a blood test. Therefore, our Supreme Court has not decided whether the buccal swab test implicates constitutional protections and, as such, we decline at this time to conclude that the additional performance of such tests are constitutionally prohibited.

prove this by citing cases in which parties alleged that Roche Biomedical Laboratories, Inc., the same lab which conducted the testing in the instant matter, switched samples or mislabeled containers. As the trial court stated, even if appellee had proven that the lab had switched samples in the past, that would not be evidence that the same happened in this case. Furthermore, appellee's expert witness, Dr. Harris, testified that Roche Biomedical Laboratories performs approximately 50,000 paternity tests every year and that he was aware of only one case in which personnel had mislabeled containers or switched samples. Dr. Harris continued by testifying that buccal swab testing is more accurate in excluding fathers than the HLA blood test. Dr. Harris stated that even if an HLA test was performed and it returned an opposite result, "In light of the DNA testing that has already been done, I'd still have to say that the man is not the father of the child." Thus, appellee has failed to prove by a preponderance of the evidence that the initial buccal swab DNA test was defective. (*See DeAngelo, supra,* holding that "the rule requires a showing by a preponderance of the evidence that the results from the last test administered were inaccurate.")

We need not and do not decide whether the DNA buccal swab test employed herein is entitled to the same constitutional considerations said to attach to blood extraction tests. *See Koleski v. Park,* 363 Pa.Super. 22, 525 A.2d 405 (1987). If indeed however, the issue becomes one of Fourth Amendment protections, it is logical to observe that while the DNA test is not as invasive or intrusive as a blood test, it has the same potential for psychological harassment particularly when conducted serially without a showing that prior testing was unreliable.

Order reversed. Remanded. Jurisdiction relinquished.

DEL SOLE, J., files concurring and dissenting opinion.

DEL SOLE, Judge, concurring and dissenting.

While I agree with my esteemed colleagues that the the trial court erred by awarding Appellee an additional buccal

swab paternity test without proof by a preponderance of the evidence that the initial test was defective, I must dissent from the Majority's interpretation of *DeAngelo v. Murray*, 536 Pa. 206, 638 A.2d 966 (1994).

The Majority states that the Supreme Court did not consider the Fourth Amendment interest in reaching its decision in *DeAngelo. DeAngelo* cites *Koleski v. Park*, 363 Pa.Super. 22, 525 A.2d 405 (1987), which stated:

> The Fourth Amendment to the Constitution of the United States expressly provides that "[t]he right of the people to be secure in their **persons,** houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." Compulsory administration of a blood test falls within the scope of the Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). The Fourth Amendment's "proper function is to constrain, not against all intrusions [into the body for blood] as such, but against intrusions which are not justified in the circumstances." *Id.*, at 768, 86 S.Ct. at 1834. (Footnote omitted).

*Koleski*, 363 Pa.Super. at 29, 525 A.2d at 408.

Furthermore, we held in *Koleski* that "constitutional rights implicated in the extraction of blood samples and resolution of questions of paternity require that the moving party show by a preponderance of the evidence that the results of the first tests were inaccurate before a second blood extraction can be ordered." *Id.*, 525 A.2d at 406. We concluded that requiring a hearing for a determination on the inaccuracy of the first blood test prior to an order for a second blood test extraction protects the parties' Fourth Amendment rights and limits the potential for harassment. *Koleski*. This ruling was not premised on the intrusiveness of the procedure, but on the constitutional protection to be secure in one's person.

Since *DeAngelo* relied on *Koleski*, our Supreme Court applied Fourth Amendment protections in setting the standard for when additional paternity tests can be ordered. The court required a showing of defective testing before subjecting

someone to another test. Given that standard, I conclude that additional swab samples are constitutionally prohibited and cannot be compelled absent a showing the initial test was inaccurate. Therefore, I concur in the result.